**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _________
Associated with Southern District of New York Civil Action No. 12 Civ. 1540 (AJN) (consolidated)

DISH NETWORK L.L.C.,

*Non-Party Movant*,

v.

WNET,
THIRTEEN,
FOX TELEVISION STATIONS, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
WPIX, INC.,
UNIVISION TELEVISION GROUP, INC.,
THE UNIVISION NETWORK LIMITED PARTNERSHIP, and
PUBLIC BROADCASTING SERVICE,

*Respondents*.

---

**NON-PARTY DISH NETWORK L.L.C.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SUBPOENAS**

---

Annette L. Hurst
ORRICK, HERRINGTON & SUTCLIFFE, LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
ahurst@orrick.com
(415) 773-5700

*Attorneys for Non-Party*
*DISH Network L.L.C.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 3

ARGUMENT ..... 6

THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY SUBJECT DISH TO UNDUE BURDEN AND APPEAR TO HAVE BEEN INTERPOSED FOR AN IMPROPER PURPOSE ..... 6

I. ANY POTENTIALLY RELEVANT INFORMATION CONCERNING COMMUNICATIONS BETWEEN DISH AND AEREO SHOULD BE OBTAINED DIRECTLY FROM AEREO ..... 8

II. RESPONDENTS HAVE NO NEED FOR ANY DISH CONFIDENTIAL ANALYSES ..... 9

III. TO THE EXTENT THAT THE SUBPOENAS SEEK INFORMATION FOR USE IN FOX'S ACTION AGAINST DISH, THE SUBPOENAS ARE WHOLLY IMPROPER ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abiakam v. Qwest Corp.*,
No. 10-cv-03086-CMA-BNB, 2011 WL 4916304 (D. Colo. Oct. 17, 2011)....8

*American Broad. Cos. v. Aereo, Inc.*,
874 F. Supp. 2d 373 (S.D.N.Y. 2012)....3, 4, 10

*American Standard Inc. v. Pfizer Inc.*,
828 F.2d 734 (Fed. Cir. 1987)....10

*Cantrell v. US Bioservices Corp.*,
No. 09-mc-0158-CV-W-GAF, 2009 WL 1066011 (W.D. Mo. April 21, 2009)....7

*Cytodyne Techs., Inc. v. Bogenic Techs., Inc.*,
216 F.R.D. 533 (M.D. Fla. 2003)....10

*EchoStar Commcn's Corp. v. News Corp. Ltd.*,
180 F.R.D. 391 (D. Colo. 1998)....7, 10, 11

*Fox Broad. Co. v. DISH Network, L.L.C.*,
__ F. Supp. 2d __, No. CV 12-04529 DMG, 2012 WL 5938563 (C.D. Cal. Nov. 7, 2012)....5

*Hawthorn, Inc. v. Herman Miller, Inc.*,
988 F.2d 975 (Fed. Cir. 1993)....8

*Int'l Coal Group, Inc. v. Tetra Fin. Group, LLC*,
No. 2:09-cv-115-cw-PMW, 2010 U.S. Dist. LEXIS 51869 (D. Utah May 24, 2010)....7, 9

*Jennings v. Peters*,
162 F.R.D. 120 (N.D. Ill. 1995)....11

*Musarra v. Digital Dish, Inc.*,
No. 2:05-CV-545, 2008 WL 4758699 (S.D. Ohio Oct. 30, 2008)....8

*Premier Election Solutions, Inc. v. Systest Labs Inc.*,
No. 09-cv-01822, 2009 WL 3075597 (D. Colo. Sept. 22, 2009)....9

*R & D Bus. Sys. v. Xerox Corp.*,
152 F.R.D. 195 (D. Colo. 1993)....9, 10

*In re Rembrandt Techs., LP*,
No. 09-cv-00691, 2009 WL 125876 (D. Colo. May 4, 2009)....7

*Spacecon Specialty Contractors, LLC v. Bensiger*,
No. 09-cv-02080-REB-KLM, 2010 U.S. Dist. LEXIS 111092 (D. Colo. Oct. 1, 2010)....6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*,
No 1:05-MC-107, 2005 WK 2571943 (W.D. Mich. Oct. 12, 2005) ........................................9

**Rules**

Fed. R. Civ. P. 45(c)(3)..........................................................................................6, 7, 8, 9

**Other Authorities**

9 James Wm. Moore et al., Moore's Federal Practice - Civil § 45.52[1] (3d ed. 2013)..................9

Non-Party DISH Network L.L.C. ("DISH") submits the following Memorandum of Law in support of its motion to quash the subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas") issued out of this Court and served upon it on March 18, 2013 by Plaintiffs WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, Inc., Univision Television Group, Inc., Univision Network Limited Partnership, and Public Broadcasting Service (collectively, "Respondents") in the case of *WNET v. Aereo, Inc.*, No. 12 Civ. 1540 (S.D.N.Y.) pending in the Southern District of New York ("the *Aereo* case" or the "underlying action").

**INTRODUCTION**

The Subpoenas seek documents and a 30(b)(6) witness from non-party DISH concerning its technical and business discussions with the defendant in the underlying action, Aereo, Inc. ("Aereo"). The return date for the documents is April 2 and for the 30(b)(6) testimony is April 17, 2013. The Subpoenas should be quashed in their entirety on the grounds that they are wholly unnecessary and thus subject DISH to unwarranted burden, and also because they appear to have been interposed for an improper purpose to obtain discovery in a pending, unrelated action in another court between one of the Respondents and DISH.

Respondents may readily obtain all of the information that they seek either directly from the entity that they sued or through the development of evidence from qualified expert witnesses. There is no need for DISH to be drawn into the *Aereo* litigation and shoulder the burden of producing a corporate designee for a deposition or responding to document requests, which include requests for confidential internal strategic business analyses. During meet and confer, Respondents offered no evidence that they requested and failed to obtain the information from Aereo, or that it would be impossible to obtain from Aereo. Additionally, because Respondent

Twentieth Century Fox Film Corporation is suing DISH in the Central District of California, and because a motion for a preliminary injunction is set for hearing in that action on April 19, the timing of the Subpoenas with compliance two days prior to that hearing appears designed to harass or otherwise obtain discovery for that suit—both improper purposes.

DISH's counsel met and conferred with Respondents' counsel prior to filing this motion to quash, and requested that the Subpoenas be voluntarily withdrawn on the grounds that they are unnecessary and invasive. Echtman Decl. ¶¶ 3-5. Respondents' counsel declined, claiming that the Subpoenas were necessary for discovery on the subjects of (i) Aereo's expansion plans; (ii) Aereo's market; and (iii) Aereo's competition. *Id.* ¶ 4. There is no such necessity. Information on Aereo's expansion plans, Aereo's market and Aereo's competition is best obtained from Aereo, not DISH. Moreover, the Subpoenas are not narrowly targeted to the subjects identified by Respondents' counsel.

*First*, the Subpoenas improperly seek discovery from DISH that is duplicative and cumulative of discovery that may be had directly from Aereo, such as (i) Aereo's communications with DISH; (ii) any "actual, contemplated, considered, or proposed" business arrangements between Aereo and DISH; and (iii) "offers or expressions of interest" by DISH in acquiring Aereo's assets. *Id.* Exs. 2-3. When discovery is available from a party to the litigation, seeking it from a non-party is presumptively unduly burdensome and must be denied.

*Second*, the Subpoenas improperly seek discovery from DISH on commercially sensitive subject matter, such as (i) any valuation that DISH may have performed of Aereo; (ii) the potential impact of Aereo on the broadcast television networks and the retransmission fees that multichannel video programming distributors ("MVPDs"), such as DISH, pay to the networks; and (iii) any "potential or contemplated" integration of Aereo's technology into devices that

DISH provides to its satellite television customers, including the Hopper Whole-Home HD DVR. *Id.* Respondents are capable of performing their own valuations and market analyses, through expert witnesses or otherwise, and should not be permitted to engage in a fishing expedition to obtain highly confidential internal analyses from a non-party such as DISH. In addition, the broadcast television networks, which include Respondents, are best-situated to assess the impact of Aereo's service upon themselves. To the extent that DISH might have internally valued Aereo, assessed its impact on retransmission fees paid to the networks, or contemplated incorporating Aereo technology into DISH products, the documents would be highly confidential and proprietary. As a non-party, DISH should not be required to share these types of documents with Respondents or Aereo.

*Third*, the Subpoenas are improper because they seek discovery with respect to potential future development plans for a DISH product (the Hopper) that is the subject of pending litigation between DISH and one of the Respondents, Twentieth Century Fox Film Corporation, and that has no relationship to the *Aereo* litigation. For all of these reasons, the Subpoenas subject DISH to undue burden and should be quashed.

## FACTUAL AND PROCEDURAL BACKGROUND

***The underlying action.*** Aereo operates the Aereo.com website, which provides subscribers with over-the-air broadcast television (e.g., ABC, CBS, NBC, Fox and PBS) on Internet-connected devices, such as personal computers, iPhones, and iPads. *Id.* Ex. 6, ¶¶ 24-29 & Ex. 10. Respondents, the owners of copyrighted television programming, and operators of over-the-air broadcast television stations, including the Fox broadcast network stations, filed suit against Aereo in the Southern District of New York on March 1, 2012. *Id.* Ex. 6, ¶¶ 10-22. The Complaint alleges, among other things, that by capturing and then retransmitting live broadcast

television programming over the Internet to subscribers, Aereo has infringed Respondents' public performance and reproduction rights under the Copyright Act. *Id.* ¶¶ 42-58. As relief, Respondents seek a permanent injunction and damages. *Id.* at p. 16.

Another group of copyright holders and broadcasters, including ABC, CBS, and NBC, filed a parallel action against Aereo in the Southern District of New York on the same day as Respondents. *Id.* Ex. 8. Two week later, both groups of plaintiffs moved for a preliminary injunction prohibiting Aereo from operating the aspects of its service that enable subscribers to stream live broadcast television over the Internet. *See American Broad. Cos. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 375 (S.D.N.Y. 2012). After a period of discovery and an evidentiary hearing, the Court denied the motion, concluding that the plaintiffs had failed to establish a likelihood of success on the merits of their copyright infringement claims. *Id.* at 396. On April 1, 2013, the Second Circuit affirmed the district court's denial of the plaintiffs' motion for a preliminary injunction. Echtman Decl. Ex. 9.

***Non-party DISH Network L.L.C.*** DISH is the nation's third-largest pay-television provider, delivering satellite-television services to over 14 million customers in the United States. *Id.* Ex. 11 at 1. Like other pay-television providers, such as DirecTV, Comcast, and Verizon FiOS, DISH licenses the right to retransmit television programming to its subscribers. *Id.* at 1, 22-25. DISH has licenses with the major over-the-air broadcast television networks, ABC, CBS, NBC, and Fox, that take the form of retransmission consent agreements entered into pursuant to statutory licenses in the Copyright Act. *Id.* at 14.

***DISH Network L.L.C.'s Litigation with Fox.*** DISH is involved in litigation with Respondent Twentieth Century Fox Film Corporation and other Fox affiliates (collectively "Fox") over features available on DISH's original Hopper Whole-Home HD DVR, released in

March 2012, and the second-generation Hopper with Sling DVR, which DISH leases and sells to its satellite television subscribers. *Id.* ¶¶ 6-8 & Exs. 1, 12, 14. Those devices are developed for DISH and supplied to DISH by its technology vendor, EchoStar Technologies L.L.C. ("EchoStar"). *Id.* Ex. 11 at i-ii, 2, 7.

At the time that the original Hopper DVR was launched, it contained a recording feature known as PrimeTime Anytime ("PTAT"). DISH customers can enable PTAT to record all of the primetime programming on any or all of the four major broadcast networks on any night of the week. *Id.* Ex. 12. In May 2010, DISH introduced another feature to the Hopper, known as AutoHop. *Id.* Ex. 13. DISH customers can use AutoHop to skip over all of the commercials when playing back certain PTAT-recorded programs the day after the program has aired. *Id.* Fox sued DISH on May 24, 2012 in the Central District of California, claiming that the PTAT and AutoHop features on the Hopper violate its copyrights and breach DISH's retransmission consent agreement with Fox's owned and operated broadcast television stations. *Id.* ¶ 6 & Ex. 1. Fox sought a preliminary injunction against the PTAT and AutoHop features, which was denied by order dated November 7, 2012. *Fox Broad. Co. v. DISH Network, L.L.C.*, __ F. Supp. 2d __, No. CV 12-04529 DMG (SHx), 2012 WL 5938563 (C.D. Cal. Nov. 7, 2012). Fox has appealed to the Ninth Circuit. Echtman Decl. ¶ 7.

DISH announced its second generation Hopper, known as the Hopper with Sling, in January of this year. *Id.* ¶ 8 & Ex. 14. The Hopper with Sling incorporates Sling technology, which DISH customers can use to remotely access live or recorded programming on their Hoppers with Internet-connected devices, such as personal computers, laptops, smartphones or tablets. *Id.* Ex. 14.[1] It also contains a feature known as Hopper Transfers, which gives DISH

[1] Sling Media, Inc., which developed Sling technology, is a wholly-owned subsidiary of EchoStar. Echtman Decl. Ex. 11 at 50. Sling Media sells the Slingbox product, which is also a subject of the Subpoenas. *Id.* at 2, 26.

customers the ability to wirelessly transfer Hopper DVR recordings to their iPads. *Id.* Fox amended its complaint against DISH in the Central District of California action to include these new Hopper with Sling features, and moved for a second preliminary injunction against DISH. *Id.* Ex. 1. A hearing on Fox's second motion for a preliminary injunction is set for April 19, 2013. *Id.* ¶ 8.

***The Subpoenas.*** Respondents, through counsel, served DISH with the Subpoenas on March 18, 2013. *Id.* Exs. 2-3. The subpoena *duces tecum* has a return date of April 2, 2013, and the subpoena *ad testificandum* notices DISH's deposition for April 17, 2013, two days before the hearing on Fox's second motion for a preliminary injunction in its action against DISH over the features on the Hopper DVR.

Generally speaking, the subpoena *duces tecum* seeks three categories of documents from DISH and *all* affiliated entities: (i) all "draft or final agreements and memoranda of understanding" with Aereo, and (ii) any valuations of Aereo; and (iii) all documents concerning the potential impact of Aereo, or a business arrangement between DISH and Aereo, on the broadcast television networks and the retransmission fees that DISH pays to the networks. *Id.* Ex. 2. In a similar vein, the subpoena *ad testificandum* seeks testimony from DISH on: (i) communications and negotiations with Aereo; (ii) any "actual, contemplated, considered, or proposed" business arrangements with Aereo and "offers or expressions of interest" in acquiring Aereo's assets; (iii) any valuation of Aereo and the potential impact of Aereo, or a business arrangement between DISH and Aereo, on the broadcast television networks and the retransmission fees that DISH pay to the networks; and (iv) any "potential or contemplated" integration of Aereo's technology into any of DISH's or EchoStar's devices, including the Hopper DVR and the Slingbox. *Id.* Ex. 3.

## ARGUMENT

### THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY SUBJECT DISH TO UNDUE BURDEN AND APPEAR TO HAVE BEEN INTERPOSED FOR AN IMPROPER PURPOSE

The Subpoenas should be quashed on the grounds that they are burdensome to DISH and the Respondents do not have a substantial need for the documents that they seek. Litigants must carry a "heavier" burden when discovery is sought from a non-party, like DISH, rather than a party to the litigation. *Spacecon Specialty Contractors, LLC v. Bensiger*, No. 09-cv-02080-REB-KLM, 2010 U.S. Dist. LEXIS 111092, at *8 (D. Colo. Oct. 1, 2010). Rule 45(c)(3) of the Federal Rules of Civil Procedure requires courts to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). If a subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information," the court "may" quash or modify the subpoena, Fed. R. Civ. P. 45(c)(3)(B)(i) unless the serving party can "show[] a substantial need for the testimony or material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(c)(3)(C)(i).

In "balanc[ing] the needs for discovery against the burden imposed when parties are ordered to produce information or materials," the "status of a person or entity as a non-party is a factor which weighs against disclosure." *EchoStar Commcn's Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998); *Int'l Coal Group, Inc. v. Tetra Fin. Group, LLC*, No. 2:09-cv-115-cw-PMW, 2010 U.S. Dist. LEXIS 51869, at *3 (D. Utah May 24, 2010) ("[N]on-party status weighs against disclosure."). Here, where Respondents are able to obtain the requested discovery from a party to the litigation, and have no need whatsoever for any confidential business information from DISH, the Subpoenas should be quashed outright.

## I. ANY POTENTIALLY RELEVANT INFORMATION CONCERNING COMMUNICATIONS BETWEEN DISH AND AEREO SHOULD BE OBTAINED DIRECTLY FROM AEREO

There is no basis for requiring DISH to bear the burden and expense of searching for documents, or offering testimony, concerning any discussions or prospective business arrangements with Aereo. Time and again, courts have held that if documents or information are available from a party to the litigation, discovery from a non-party is unduly burdensome and should be denied. *See, e.g.*, *In re Rembrandt Techs., LP*, No. 09-cv-00691, 2009 WL 1258761, at *7 (D. Colo. May 4, 2009) (refusing to permit discovery from non-party where party seeking discovery could obtain information "from the parties to the litigation"); *News Corp. Ltd.*, 180 F.R.D. at 395 (refusing to permit discovery from non-party where materials relating to transaction equally available from party to litigation); *Cantrell v. US Bioservices Corp.*, No. 09-mc-0158-CV-W-GAF, 2009 WL 1066011, at *2 (W.D. Mo. April 21, 2009) (holding that where information could "be first sought from the party defendants … the subpoena would impose an undue burden on a non-party"); *Musarra v. Digital Dish, Inc.*, No. 2:05-CV-545, 2008 WL 4758699, at *4 (S.D. Ohio Oct. 30, 2008) (refusing to impose "burden of producing documents" on non-party where party "should have possession" of requested documents); *Hawthorn, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (holding that district court properly required party "to seek discovery from its party opponent before burdening the nonparty … with this ancillary proceeding").

Any potentially relevant communications or "draft or final agreements or memoranda of understanding" are readily available from Aereo. Echtman Decl. Exs. 2-3. If DISH communicated with Aereo, Aereo can testify to the substance of the communications. If DISH sent Aereo any documents, Aereo can produce the documents. Aereo's expansion plans are hardly a secret, (*id.* Ex. 4), but if Respondents have any questions about those plans, they can ask

Aereo. Respondents have no need for DISH's internal "drafts" of any possible "agreements or memoranda of understanding," or for testimony from DISH concerning whether it "contemplated" or "considered" entering into a business arrangement with Aereo. *Id.* Exs. 2-3. That material is simply irrelevant. *Abiakam v. Qwest Corp.*, No. 10-cv-03086-CMA-BNB, 2011 WL 4916304, at *2 (D. Colo. Oct. 17, 2011) ("[W]hen the request is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request.").

## II. RESPONDENTS HAVE NO NEED FOR ANY DISH CONFIDENTIAL ANALYSES

The Subpoenas should be quashed because they improperly target confidential internal analyses from DISH and affiliated entities. There can be no doubt that a company's internal analyses of the market and its potential competitors is "confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i). If that sort of information were disclosed, it would surely cause "substantial economic harm" to the company's "competitive position." 9 James Wm. Moore et al., Moore's Federal Practice - Civil § 45.52[1] (3d ed. 2013) ("Confidential commercial information is production or testimony that would cause 'substantial economic harm' to the competitive position of the entity from whom it is obtained."); *see Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, No 1:05-MC-107, 2005 WL 2571943, at *1 (W.D. Mich. Oct. 12, 2005) ("market analys[es]" and "strategic business plans" are "confidential commercial information" under Rule 45(c)(3)(B)(i)). Nevertheless, Respondents seek documents and testimony concerning any valuation by DISH of Aereo, and the impact of Aereo, or a potential business arrangement between DISH and Aereo, on the broadcast television networks and the retransmission fees that DISH pays to the networks. Echtman Decl. Exs. 2-3.

A subpoena seeking such confidential business information "should be quashed unless the party serving the subpoena shows a substantial need." Fed. R. Civ. P. 45(c)(3)(B) advisory committee's note. The party seeking discovery must establish that disclosure is both "*relevant* and *necessary* to the action." *Premier Election Solutions, Inc. v. Systest Labs Inc.*, No. 09-cv-01822, 2009 WL 3075597, at *8 (D. Colo. Sept. 22, 2009) (emphasis added); *Int'l Coal Group, Inc.*, 2010 U.S. Dist. LEXIS 51869, at *3 (a party seeking confidential business information from a non-party must "establish that it is both relevant and necessary"); *R & D Bus. Sys. v. Xerox Corp.*, 152 F.R.D. 195, 196-97 (D. Colo. 1993) (burden on party seeking discovery to show that confidential business information "both relevant and necessary").

Respondents have, quite simply, no need for any valuations or analyses *performed by DISH*. If Respondents want to know the value of Aereo, they can hire an expert or perform the valuation themselves. If Respondents want to know "potential impact" of Aereo on "broadcast television networks," "producers of broadcast television programming," or "the retransmission consent fees paid by DISH to the broadcast television stations," they can perform their own analysis. Echtman Decl. Exs. 2-3. Indeed, it borders on the absurd for Respondents—"broadcast television networks" and "producers of broadcast television programming"—to seek discovery from DISH, a non-party, concerning the potential impact from Aereo on *themselves*.

The requested discovery is all the more inappropriate given that Respondents assert that DISH and Aereo are competitors—a fact stressed by Respondents to the Southern District of New York. *See Id.* Ex. 7, ¶¶ 10, 14; *Aereo*, 874 F. Supp. 2d at 398. Courts "presume[] that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *News Corp. Ltd.*, 180 F.R.D. at 395; *Xerox Corp.*, 152 F.R.D. at 197 (same); *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (same); *Cytodyne Techs., Inc. v. Bogenic Techs.,*

*Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003) ("[T]he courts have acknowledged that disclosure of confidential information is presumed to be harmful to the disclosing entity.").

Nor is Fox a disinterested party. As Fox's declarant explained to the Court in the Southern District of New York, Aereo will be a "factor in" Fox's retransmission consent negotiations with pay-television providers, like DISH. Echtman Decl. Ex. 7, ¶ 10; *Aereo*, 874 F. Supp. 2d at 398. Fox, and the other Respondents, should not be allowed an unnecessary sneak peek into what is on DISH's mind regarding the value or impact of Aereo.[2]

## III. TO THE EXTENT THAT THE SUBPOENAS SEEK INFORMATION FOR USE IN FOX'S ACTION AGAINST DISH, THE SUBPOENAS ARE WHOLLY IMPROPER

The Subpoenas should be quashed to the extent that they seek documents and testimony for use in another action. Respondents, including Fox, seek testimony in this action concerning the "Hopper" and "Sling," both of which are at the heart of Fox's California action against DISH (in which Fox is represented by the same law firm as the subpoenaing Respondents in this action). Echtman Decl. Ex. 3. And DISH's deposition is noticed for two days before the hearing on Fox's motion for a preliminary injunction in its action against DISH. *Id.*[3] "It is axiomatic that a party cannot take discovery for purposes unrelated to the lawsuit at hand." *News Corp. Ltd.*, 180 F.R.D. at 396 (quoting *Jennings v. Peters*, 162 F.R.D. 120, 122 (N.D. Ill. 1995)). To

[2] The Protective Order in place in the underlying action provides little protection; materials designated "Highly Confidential" can still be shared with up to three in-house counsel. Echtman Decl. Ex. 2 (Protective Order at § 14(a)). The Wall Street Journal, which is under common ownership with Fox, reported yesterday that Aereo engaged in discussions with AT&T, DirecTV, and DISH, based on information from unnamed sources. *Id.* Ex. 5. In any event, Respondents have no need for DISH's confidential business information, so protective order or not, the Subpoenas must be quashed.

[3] Respondents' counsel indicated a willingness to move the deposition date to accommodate DISH, but the fact that the deposition was noticed for two days prior to the hearing on Fox's second preliminary injunction motion tends to show that the deposition is sought for an improper purpose.

the extent that the Subpoenas are aimed at Fox's pending litigation with DISH, as opposed to its dispute with Aereo, they are entirely improper.

## CONCLUSION

For the foregoing reasons, the Court should grant DISH's motion and quash the Subpoenas.

Dated: April 1, 2013

ORRICK, HERRINGTON & SUTCLIFFE LLP

Annette L. Hurst
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
ahurst@orrick.com
(415) 773-5700

*Attorneys for Non-Party*
*DISH Network L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this April 1, 2013, that a true and correct copy of the foregoing NON-PARTY DISH NETWORK L.L.C.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SUBPOENAS was sent via United Parcel Service Next Day Air Service, addressed to:

Julie Shepard, Esq.
Jenner & Block
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: 213 239-2207
jshepard@jenner.com

*Attorneys for Respondents*

Ryan Larson
Paralegal
Orrick Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
Telephone: 212-506-5364
rlarson@orrick.com