IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Phillip Brimmer

Civil Action No. 1:13-cv-00832-PAB
Associated with Southern District of New York Civil Action No. 12 Civ. 1540 (AJN)
(consolidated)

DISH NETWORK L.L.C.,

    *Non-Party Movant,*

v.

WNET, THIRTEEN, FOX TELEVISION STATIONS, INC.,
TWENTIETH CENTURY FOX FILM CORPORATION,
WPIX, INC., UNIVISION TELEVISION GROUP, INC.,
THE UNIVISION NETWORK LIMITED PARTNERSHIP, and
PUBLIC BROADCASTING SERVICE,

    *Respondents.*

## DECLARATION OF JULIE SHEPARD

I, Julie Shepard, declare as follows:

    1.    I am an attorney licensed to practice law in the State of California, and I am a partner at Jenner & Block LLP, counsel of record for WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, Inc., Univision Television Group, Inc., The Univision Network Limited Partnership, and Public Broadcasting Service, the plaintiffs in *WNET, et al. v. Aereo, Inc.*, No. 12-1450 (S.D.N.Y.) (Consolidated) (collectively, "Respondents"). I submit this declaration in support of Respondents' Opposition to Non-Party Dish Network L.L.C.'s Motion to Quash. I have personal knowledge of the facts set forth in this

1

declaration and, if called as a witness, I could and would testify competently to such facts under oath.

2.  On March 28, 2013, Elyse Echtman, Dish's counsel, called me and asked me to withdraw the subpoenas which we had served earlier that month (the "Subpoenas"). I asked Ms. Echtman to explain why she thought we should withdraw the Subpoenas. After I considered her response, I informed her that we would not be withdrawing the Subpoenas. At the same time, I stated that I was prepared to discuss any specific issue or concern she had regarding the Subpoenas, short of withdrawing them.

3.  In response, Ms. Echtman never suggested that complying with the Subpoenas would impose any sort of undue burden on Dish, nor did she suggest that Dish would be amenable to any sort of limitation to the Subpoenas — rather, she simply insisted that the Subpoenas be withdrawn.

4.  Ms. Echtman also never raised any issue with the terms of the Protective Order in place in the Aereo Litigation, a true and correct copy of which accompanied the Subpoenas and is attached hereto as Exhibit 1. The only concern that she raised that was even tangentially related to the Protective Order was a concern that documents produced in the Aereo Litigation might be used in the separate and unrelated litigation between Dish and one of the Respondents, which was filed after the Aereo Litigation (*Fox Broadcasting Company, et al. v. Dish Network, L.L.C.*, Case No. 12-4529 (C.D. Cal.)) (the "Dish Litigation"). In response, I repeatedly assured her that any documents and testimony provided by Dish in the Aereo Litigation would be used only in the Aereo Litigation in accordance with the Protective Order's express terms.

5. As Ms. Echtman did not raise any concerns about the terms of the Protective Order, I had no occasion to raise with Ms. Echtman the fact that some of Dish's competitively-sensitive documents had already been produced under the Protective Order without objection by Dish and, thus, one potential way we could modify the Protective Order was to agree to treat the documents produced by Dish in the same manner as Dish's other competitively-sensitive documents which had already been produced in the Aereo Litigation. Specifically, Respondents were required to produce their confidential retransmission consent agreements with Dish (and other satellite and cable television providers) to Aereo. Respondents' counsel provided notice of the production to Dish. Attached hereto as Exhibit 2 are true and correct copies of notice letters sent to Dish. As noted in the Protective Order and notice letters, three in-house counsel are able to see high level summaries of these competitively-sensitive agreements, but not the agreements themselves. Respondents' counsel received no objections from Dish to the production of its agreements under these conditions. If Ms. Echtman had raised concerns about three in-house counsels' access to Dish's documents, we could have discussed this as a potential means to address any concern Dish claims to have about in-house counsels' access to documents produced in the Aereo Litigation.

6. Similarly, as Ms. Echtman did not raise any concerns about the Protective Order allowing three in-house counsel access to documents produced in this case, I also had no occasion to inform her that the parties in Aereo are currently in the process of adding an addendum to the Protective Order to provide for an outside-attorneys'-eyes-only provision to cover documents that implicate the interests of non-parties Amazon, Apple, Netflix, and Hulu.

7. Ms. Echtman did express a concern that the date for the deposition compelled by the subpoena *ad testificandum* was close to the date for a hearing in the Dish Litigation. I

immediately responded that we were willing to change the date of the deposition to a mutually agreeable one in order to accommodate Dish. She refused to discuss the possibility, instead insisting that the Subpoenas be withdrawn.

8.    The date selected for the deposition of Dish's corporate representative fell approximately a month after service of the Subpoenas. In my estimation, this would have provided a sufficient period of time after the date upon which Dish was to produce its documents to enable Respondents' counsel to receive and review Dish's documents prior to the noticed deposition. The schedule in the Dish Litigation was not considered in selecting a date for Dish's testimony pursuant to the subpoena.

9.    During my conversation with Ms. Echtman, I explained to her that the Subpoenas seek documents and information uniquely in Dish's possession, not simply documents that are obtainable from Aereo, Inc., the defendant in the underlying litigation (referred to in my declaration as the "Aereo Litigation"). I provided a brief overview of the documents' relevance and the issues in the case.

10.   Respondents have contended since filing the Aereo Litigation that unauthorized services such as Aereo harm Respondents in their negotiations of retransmission consent agreements with television providers such DirecTV, Dish, Verizon, and Comcast. This is reflected in the Declaration of Sherry Brennan attached as Exhibit 7 to Ms. Echtman's declaration.

11.   At the preliminary injunction stage, the District Court found that Respondents would suffer irreparable harm due to Aereo's impact on their retransmission consent negotiations. A true and correct copy of excerpts from the Order issued by Judge Nathan, dated July 11, 2012,

addressing the issue of the irreparable harm that Aereo's service causes to Respondents is attached hereto as Exhibit 3.

12. Aereo contested at the preliminary injunction stage, and continues to contest now, the fact that Respondents are irreparably injured by Aereo. Judge Nathan ordered Respondents to produce their retransmission consent agreements with Dish and other providers so that Aereo could contest the issue of irreparable harm as it relates to their retransmission consent agreements. A true and correct copy of Judge Nathan's Order, dated April 13, 2012, is attached hereto as Exhibit 4.

13. Since then, Aereo has requested all of Respondents' retransmission consent negotiations in Aereo's continued effort to refute Respondents' claims of harm. This is reflected in Request Nos. 45-50 of Aereo's Second Request for Documents dated November 6, 2012, a true and correct copy of which is attached hereto as Exhibit 5. In the meet and confer process concerning Aereo's requests, Respondents agreed to produce any retransmission negotiation documents that mention Aereo and Aereo-like services (i.e., Aereokiller, FilmOn, ivi).

14. Aereo has asserted fair use as a defense in the underlying litigation and contests, as part of Aereo's defense, that Aereo's service will cause market harm under the applicable test.

15. Aereo was first publicly announced in 2011.

16. Respondents served Requests for Production on Aereo seeking, among other things, to discover its plans to expand its service through third parties or otherwise and its communications with satellite and cable TV providers. Such requests include Request Nos. 7 through 11 and 19 through 20 in Respondents' Second Set of Requests for Production. A true and

correct copy of this document is attached hereto as <u>Exhibit 6</u>. Despite these requests, however, Aereo has produced only a limited number of responsive documents.

17. Attached hereto as <u>Exhibit 7</u> is a true and correct copy of excerpts of the memorandum of points and authorities submitted by Respondents in the underlying litigation in support of their motion for a preliminary injunction.

18. Attached hereto as <u>Exhibit 8</u> is a true and correct copy of excerpts of a transcript of a February 20, 2013 earnings call containing statements by Charlie Ergen, the Chairman of Dish's Board of Directors.

19. Attached hereto as <u>Exhibit 9</u> is a true and correct copy of a document produced in the underlying litigation as AEREO0230828-29.

20. Attached hereto as <u>Exhibit 10</u> is a true and correct copy of a document produced in the underlying litigation as AEREO0205984-88.

21. The potential effect of Aereo's service on retransmission consent agreements, and the possibility that a pay television provider might partner with Aereo to gain leverage in retransmission consent negotiations, have been discussed in the media since Aereo's inception. Representative articles from February through July 2012 are attached hereto as <u>Exhibits 11-14</u>.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 22nd day of April, 2013, at Los Angeles, California.

*/s/ Julie Shepard*