IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00832-PAB-KLM

DISH NETWORK, L.L.C.,

       Petitioner,

v.

WNET,
THIRTEEN,
TWENTIETH CENTURY FOX FILM CORPORATION,
WPIX, INC,
UNIVISION TELEVISION GROUP, INC.,
THE UNIVISION NETWORK LIMITED PARTNERSHIP, and
PUBLIC BROADCASTING SERVICE,

       Respondents.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on **Non-Party DISH Network LLC's Motion to Quash Subpoenas** [#2][1] (the "Motion").[2] Respondents[3] filed an **Opposition to Non-Party DISH Network LLC's Motion to Quash Subpoenas** [#6] (the "Response"), and Movant

_____

[1] [#2] is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] Non-party DISH Network LLC is "the nation's third-largest pay-television provider, delivering satellite-television services to over 14 million customers in the United States." *Memorandum of Points and Authorities in Support of Motion to Quash Subpoenas* [#2-1] (the "Memorandum") at 8. I refer to it as "Movant" or "DISH."

[3] Respondents are "the owners of copyrighted television programming and operators of over-the-air broadcast television stations." *Memorandum* [#2-1] at 7. For convenience, I refer to them as "Respondents" or the "Broadcasters."

filed a **Reply in Support of Motion to Quash Subpoenas and in Response to Respondents' Opposition to Motion to Quash Subpoenas** [#11] (the "Reply").  The Court held a hearing on the Motion on May 31, 2013, and allowed the parties to file additional briefs [#19].  Respondents filed **WNET Plaintiffs' Brief Regarding Irreparable Harm and Market Harm** [#20] ("Respondents' Brief") and Movant filed a **Response to Respondents' Brief Regarding Irreparable Harm and Market Harm** [#24] ("Movant's Brief").  The Court has reviewed the Motion, Response, Reply, Respondents' Brief, Movant's Brief, all supporting documents, the entire case file and applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#2] is **GRANTED**.

## I.  Summary of the Case

The Broadcasters served the subpoenas at issue on DISH in connection with discovery in a case pending in the United States District Court for the Southern District of New York.  In that case, *WNET v. Aereo, Inc.*, No. 12 Civ. 1543 (AJN) (S.D.N.Y.), the Broadcasters sued Aereo for copyright infringement, among other claims.[4]  "Aereo operates the Aereo.com website, which provides subscribers with over-the-air broadcast television (e.g., ABC, CBS, NBC, Fox and PBS) on internet-connected devices, such as personal computers, iPhones, and iPads."  *Memorandum* [#2-1] at 7.  Although "[a] billion dollar market exists for licenses to retransmit local broadcast channels," the Broadcasters have not granted Aereo licenses or permission to transmit their copyrighted television programming, and Aereo does not pay the Broadcasters to transmit the programming over

---

[4]  I refer to this case as the "WNET case."

the internet. *Respondents' Brief* [#20] at 20.  Hence, the Broadcasters allege "that by capturing and then retransmitting live broadcast television programming over the [i]nternet to subscribers, Aereo has infringed Respondents' public performance and reproduction rights under the Copyright Act." *Id.* at 7-8.

On the same day when the WNET case was filed, another group of copyright holders and broadcasters filed a parallel lawsuit against Aereo, also in the Southern District of New York. *Am. Broad. Cos. v. Aereo, Inc.*, No. 12 Civ. 1540 (AJN) (S.D.N.Y.).[5]  Plaintiffs in the WNET case and the ABC case moved for a preliminary injunction prohibiting Aereo from enabling subscribers to stream live broadcast television over the internet.  Although the court eventually found that the plaintiffs had established irreparable harm, it denied the preliminary injunction because plaintiffs had failed to establish a likelihood of success on the merits of their copyright infringement claims. *Am. Broad. Cos., Inc. v. Aereo*, *Inc.*, 874 F. Supp. 2d 373, 396 (S.D.N.Y. 2012).  The Second Circuit affirmed. *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013).

In the meantime, before the New York court ruled on the joint motion for preliminary injunction, Twentieth Century Fox Film Corporation and its affiliates sued DISH in the Central District of California. *Fox Broad. Co. Inc. v. DISH Network LLC*, Case No. 12-04529 DMG (C.D. Cal.).[6]  In that suit, Fox asserts that features on a DISH product known as "the Hopper" violate Fox's copyrights and breach DISH's retransmission consent agreement with Fox's television stations. *Memorandum* [#2-1] at 9.  Fox sought a

---

[5]  I refer to this case as the "ABC case."

[6]  I refer to this case as the "Fox case."

3

preliminary injunction against operation of the targeted features of the Hopper, which the California District Court denied in November of 2012. *Fox Broad. Co. Inc. v. DISH Network, LLC*, 905 F. Supp. 2d 1088 (C.D. Cal. 2012). The Ninth Circuit affirmed. *Fox Broad. Co., Inc. v. DISH Network LLC,* ___ F.3d ___, 2014 WL 260572 (9th Cir. Jan. 24, 2014).

While the Fox suit was pending, DISH introduced a new version of the Hopper with advanced technology which allows DISH customers to remotely access live or recorded programming on their Hoppers with internet-connected devices, like laptops and smartphones. *Memorandum* [#2-1] at 9-10. In response, Fox amended its complaint and moved for a second preliminary injunction. The subpoenas at issue here were served on DISH 31 days before the date of the hearing on the second motion for preliminary injunction. The subpoena *duces tecum* had a return date of 17 days before the second preliminary injunction hearing, and the subpoena *ad testificandum* noticed DISH's deposition for two days before the hearing. *Id.* at 10. Fox is also a Respondent in this case and is represented by the same counsel in this case and the Fox case.[7]

Pay television providers like DISH "license the right to retransmit television programming to [their] subscribers. DISH has licenses with major over-the-air broadcast television networks, ABC, CBS, NBC, and Fox, that take the form of retransmission consent agreements entered into pursuant to statutory licenses in the Copyright Act." *Memorandum* [#2-1] at 8. Thus, the Broadcasters are content suppliers to DISH, which pays "retransmission fees" to the Broadcasters for the right to transmit television programming.

---

[7]  The second motion for preliminary injunction was also denied in a September 23, 2013 Order of the District Court for the Central District of California. *Fox Broad. Co. Inc. v. DISH Network, LLC*, ___ F. Supp. 2d ___, No. CV 12-04529 (C.D. Cal. Sept. 23, 2013). On October 23, 2013, Fox appealed this Order to the Ninth Circuit Court of Appeals. The appeal remains pending. *Fox Broad. Co., et al. v. Dish Network, et al.*, No. 13-56818 (9th Cir.).

Despite Aereo's unlicensed status, the Broadcasters are also content suppliers to Aereo. DISH and Aereo, however, are solely content distributors, and to that extent are competitors.

The subpoenas at issue here seek documents and testimony from DISH regarding its business dealings with Aereo.  As explained by the Broadcasters, they seek agreements relating to any licensing or acquisition of Aereo or its technology by DISH, documents relating to the impact of Aereo on DISH's retransmission fees and on the broadcast industry, and documents regarding DISH's valuation of Aereo that would "reveal the intentions of DISH (which has an existing retransmission relationship with [the Broadcasters]) to replace the retransmission fees paid to [the Broadcasters] with Aereo." *Response* [#6] at 6; *Exh. 2 to Motion* [#2-4] at 6-7.  Among the testimony sought is information regarding DISH's communications, negotiations and potential business arrangements with Aereo, including offers to purchase or expressions of interest in Aereo's assets, information regarding the potential impact of Aereo or a deal between DISH and Aereo on the Broadcasters and retransmission fees, and information about integration of Aereo's technology into DISH's devices.  *Exh. 3 to Motion* [#2-5] at 6-7.

## II.  Standard of Review

Fed. R. Civ. P. 45(d)(3)(B)(I) permits the Court to quash a subpoena that requires disclosure of "trade secret or other confidential research, development, or commercial information."  In cases where subpoenas are served on a non-party, the non-party has the burden of showing that the requested information is confidential commercial information. Such information is generally defined as "important proprietary information that the non-party has historically sought to maintain [as confidential]."  *In re Subpoena of DJO, LLC,*

___ F.R.D. ___, 2014 WL 197721, at *3 (S.D. Cal. Jan. 15, 2014).

Fed. R. Civ. P. 45(d)(3)(C) permits the Court to nevertheless require production of confidential commercial documents or information pursuant to a subpoena if the requesting party "shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship."  In determining whether a subpoena imposes an undue burden, the court weighs the burden to the subpoenaed party against the value of the information to the requesting party.  "Generally, this requires consideration of relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* at *2 (citing *United States v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

## III.  Analysis

### A.    Confidential Commercial Information

As indicated above, DISH has the burden of establishing that the information sought is protected under Rule 45(d)(3)(B)(I).  DISH asserts that the subpoenas seek confidential internal business strategies and commercially sensitive subject matter, like DISH's valuation of Aereo, the impact of Aereo on the fees DISH pays to the Broadcasters, and whether DISH  wants to – and can – integrate Aereo into its own devices.  *Memorandum* [#2-1] at 13-14.  DISH points out that not only is Aereo its competitor, but the Broadcasters sit on the opposite side of the bargaining table from DISH when retransmission licenses and fees are negotiated.  Further, Fox is DISH's opponent in on-going federal court litigation.  *Id.* at 14-15.  DISH implies that the relationships between the entities involved here render the information sought particularly sensitive.  *Id.*  DISH posits that the

6

information sought is confidential precisely because it could be used by the Broadcasters to help them establish harm to their retransmission fee negotiations, including negotiations with DISH. *Reply* [#11] at 2. DISH asserts that to the extent it "may be engaged in business discussions with Aereo, DISH's own negotiating position would be harmed by production of its internal documents on those discussions *to Aereo*." *Id.* (emphasis in original).

The Broadcasters do not seriously argue that the information sought here is not confidential commercial information. Instead, they assert that DISH has not met its burden of showing that disclosure of the information "will work a clearly defined and serious injury to the moving party." *Response* [#6] at 9. They argue that "courts regularly order the disclosure of confidential information where, as here, the need for such information outweighs the potential harm." *Id.* at 10. Finally, they assert that "any concerns about disclosure of DISH's allegedly confidential information can be alleviated by a protective order." *Id.* at 13.

The issue of whether the information sought is confidential commercial information is separate and distinct from the issue of whether its disclosure will cause undue burden or harm. The Court has no difficulty finding that the information sought here meets the generally-accepted definitions of confidential commercial information. *See DJO,* 2014 WL 197721, at *3 ("Trade secret or commercially sensitive information must be important proprietary information and the party challenging the subpoena must make a strong showing that it has historically sought to maintain the confidentiality of this information.") (internal quotes and citation omitted); *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.,* No. 1:05-MC-107, 2005 WL 2571943, at *1 (W.D. Mich. Oct. 12, 2005) (holding

7

that market analyses and strategic business plans are confidential commercial information under Rule 45); 9 James Wm. Moore et al., Moore's Federal Practice - Civil § 45.52[1] (3d. ed. 2013) ("Confidential commercial information is production or testimony that would cause 'substantial economic harm' to the competitive position of the entity from whom it is obtained.").

The information sought by the Broadcasters is "confidential commercial information" for the following reasons.  First,  information about DISH's and Aereo's past, present and future business dealings is certainly "proprietary," in that it "relates to property."[8] *Black's Law Dictionary* (9th ed. 2009).  Second, both the importance of the information and the fact that DISH has maintained its confidentiality are adequately demonstrated by the circumstances present here.  Both sides repeatedly assert that the information is important to the health of their businesses: the Broadcasters contend that it will help to demonstrate how companies like DISH plan to leverage or already have leveraged Aereo to extract concessions in negotiations of retransmission fees, and DISH contends that it reflects "internal strategic business analyses." *Respondents' Brief* [#20] at 4; *Memorandum* [#2-1] at 5.  DISH's effort to quash the subpoenas in itself demonstrates its desire to "maintain the confidentiality of the information;" indeed, the Broadcasters do not suggest that at any point during Aereo's relatively brief existence[9] has DISH made public the type of information sought here.  Third, disclosure of the information would manifestly cause substantial

---

[8]   Here, of course, the property may be owned by DISH, Aereo, or both, as DISH suggests. "Respondents may readily obtain all of the information they seek either directly from the entity that they sued or through the development of evidence from qualified expert witnesses." *Memorandum* [#2-1] at 5. Regardless, the information sought belongs to someone other than the Broadcasters.

[9]   According to Respondents, Aereo "was only publicly announced in mid-2011." *Response* [#6] at 6.

economic harm to DISH's "competitive positions" vis-a-vis both the Broadcasters and Aereo, as it would help both to obtain an advantage over DISH in future business negotiations.  Hence, the Court finds that the information sought is confidential commercial information.

## B.    Substantial Need

Once the non-party shows that the requested information is confidential commercial information, "the burden shifts to the requesting party to show a substantial need for the testimony or material that cannot be otherwise met without undue hardship. . . ."  *DJO,* 2014 WL 197721, at *3 (internal quotations omitted).  The test for whether the requesting party has demonstrated substantial need for the confidential information under Fed. R. Civ. P. 45(d)(3)(C) may involve evaluation of a number of factors, including: (1) the relevance of the requested information; (2) the requesting party's need for the information; (3) the breadth of the document request, the time period covered by it, and the particularity with which documents are described; and (4) the burden imposed on the responding party.  *Id.* at *2.  The Court examines relevance and need below.

### 1.    Relevance

Although the common test for determining whether the requesting party has demonstrated substantial need for confidential information under Rule 45 includes examination of the relevance of the information sought, several courts have held that "a district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder."  *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995); *see also Mycogen Plant Sci., Inc. v. Monsanto Co.,* 164

F.R.D. 623, 627 (E.D. Pa. 1996).  However, when an ancillary court would not be second-guessing a relevancy ruling of the court handling the main litigation, determination of the relevance of the requested information is entirely appropriate.  *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990).  In advocating that information sought is relevant, "more is required than a theoretical argument that the requested information somehow relates to an action pending in another district."  *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 522 (W.D. Tenn. 1999).  When the requesting party asserts that the information sought is relevant to damages, it must, "at a minimum, set forth a recognized damage theory.  Additionally, the [requesting party] must enunciate some factual support for the theory with some degree of particularity.  Broad, general conclusory allegations of 'lost market share' or 'reduced price' will not suffice."  *Id.* at 524.

The Broadcasters assert that the information sought in the subpoenas is relevant for three reasons, two of which are related.  First, they assert that the information is relevant to Aereo's assertion of a fair use defense to the copyright infringement claims.  They contend that the fair use defense involves evaluation of "market harm," defined as the extent to which conduct like Aereo's would result in a substantially adverse impact on the potential market for the Broadcasters' programs if that conduct became widespread.  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 (1994).  Consequently, they argue that if DISH has plans to include Aereo's offerings in its subscriber service, such plans would be proof of adverse impact.  *Response* [#6] at 4.  ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████████████ Such

proof, Respondents argue, will end Aereo's argument that the Broadcasters' position in

retransmission negotiations is not harmed because of Aereo. *Id.* at 11. The Broadcasters

emphasize the relevance of evidence relating to their damages by pointing to Aereo's

written discovery requests in the WNET case, which seek information from the

Broadcasters about "any damages suffered by [the Broadcasters] due to Aereo," "lost

profits," and "lost business opportunities." *Exh. 5 to Decl. of Julie Shepard* [#7-5] ¶¶ 69-71.

Second, the Broadcasters ask the Court to follow the reasoning of the court in the

ABC case. The ABC court found that the Broadcasters were irreparably harmed by Aereo

because of its impact on retransmission fees. The court reasoned that as a result of

Aereo's successful launch, television distributors will either demand concessions from the

Broadcasters when negotiating these fees, or will refuse to pay them at all, like Aereo. *Am.*

*Broad. Cos.*, 874 F. Supp. 2d at 398. The Broadcasters argue that they must prove

irreparable harm to obtain a permanent injunction against Aereo. In this context,

irreparable harm results from showing how pay-television providers like DISH plan to

leverage or already have leveraged Aereo to extract concessions in negotiations with the

Broadcasters. *Respondents' Brief* [#20] at 2. The Broadcasters assert that the valuations

they seek will show how much money DISH expects to save from doing business with

Aereo, thereby avoiding or reducing transmission fees. *Response* [#6] at 12-13. They

contend that the information sought from DISH is relevant to show that harm to the

Broadcasters is not speculative. *Respondents' Brief* [#20] at 4.

Last, the Broadcasters assert that the information they seek from DISH is relevant

11

to determine whether Aereo's production of documents was complete.  They further explain that they are not seeking identical copies of documents produced by Aereo, but instead seek documents and information that may never have been in Aereo's possession. *Response* [#6] at 7-8, (citing *Knoll, Inc. v. Moderno, Inc.*, No. 12-80193, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (ordering third party production and finding no foundation laid for claim that documents had been fully produced by opposing party); *New Park Entm't LLC v. Elec. Factory Concerts, Inc.,* No. Civ.A. 98-775, 2000 WL 62315, at *5 (E.D. Pa. Jan. 13, 2000) (denying motion to quash in part on basis of argument that plaintiff was entitled to test the veracity of defendants' assertions that they had produced all documents they were required to produce)).

DISH makes two substantive arguments related to the relevance of the information sought.  First, DISH contends that the information is not relevant for a variety of reasons. This argument is discussed further below. Second, DISH adamantly asserts that the subpoenas were served for an improper purpose, which was to obtain discovery in the Fox case about development of the Hopper immediately before the second preliminary injunction hearing in that case.  *Memorandum* [#2-1] at 15.  This argument is mooted by the passage of time and the California District Court's ruling on the second motion for preliminary injunction.

DISH's arguments about relevance are as follows: (1) drafts of agreements or memoranda of understandings between DISH and Aereo are not relevant, because whether DISH *considered* a business arrangement with Aereo is not relevant, *Memorandum* [#2-1] at 13; (2) DISH's potential marginalia in documents is not relevant to the Broadcasters' copyright infringement claims against Aereo, *Reply* [#11] at 2; (3) the

12

Broadcasters have conceded the irrelevance of information about irreparable harm in light of the ABC court's holding that they established irreparable harm at the preliminary injunction stage. The Broadcasters asserted in the WNET case that Aereo's discovery requests about irreparable harm are objectionable and that the order permitting such discovery was "generous to Aereo given the marginal relevance of the documents;" *Movant's Brief* [#24] at 3; (4) DISH's documents are speculative regarding potential harm to the Broadcasters because DISH has not entered into new retransmission fee agreements; *id.* at 4; and ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

DISH's assertion about the New York District Court's determination of irreparable harm goes primarily to the Broadcasters' need for the documents, not their relevance. Accordingly, that argument is addressed below. At best, DISH's remaining arguments about relevance demonstrate that certain categories of documents, ████████████████ ██████████may not be relevant. Yet nothing in the subpoenas appears to be directed toward any entity other than DISH Network, LLC and EchoStar Technologies, LLC. *Exh. 2 to Motion* [#2-4] at 6; *Exh. 3 to Motion* [#2-5] at 5. DISH does not argue that these entities do not pay retransmission fees to the Broadcasters. Moreover, DISH makes no showing that the testimony and documents sought by the Broadcasters about DISH's plans

to do business with Aereo or to leverage Aereo in future negotiations with the Broadcasters are not relevant to the underlying litigation, especially to the Broadcasters' damages claims. While the Court does not comment on the ultimate admissibility or weight of any such evidence, the Court finds that the Broadcasters have demonstrated that the subpoenas seek information relevant to their damages. *See, e.g., Bagher v. Auto-Owners Ins. Co.,* No. 12-cv-00980-REB-KLM, 2013 WL 5417127, at *4 (D. Colo. Sept. 26, 2013); *Carbajal v. Warner*, No. 10-cv-02862-REB-KLM, 2013 WL 1129429, at *3-4 (D. Colo. Mar. 18, 2013).

### 2. Need

The parties' most strenuous arguments are directed to whether the Broadcasters have demonstrated the requisite need for the information sought in the subpoenas. For their part, the Broadcasters make two primary arguments. First, they assert that they need the information to show both irreparable harm and damages.

> Despite the District Court's findings as to Respondents' irreparable harm at the preliminary injunction stage, Aereo continues to contest that Respondents will be irreparably harmed. Aereo's continued efforts to try to marshal evidence to support its position establishes that this issue will be front and center at trial. . . . Plans by DISH, with its reach of 14 million subscribers, to include Aereo's unauthorized retransmission service in DISH's offerings would provide irrefutable proof of the adverse impact on the retransmission market for Respondents' broadcasts. . . . Respondents cannot fully assess or present at trial the potential harm that may flow from the Aereo-DISH relationship without access to DISH's internal plans to integrate and utilize Aereo and its technology . . . .

*Response* [#6] at 3-5. Second, the Broadcasters assert that they must obtain documents from DISH because they "must combat claims their harm is speculative," because DISH's drafts may not have been sent to Aereo, and because DISH's documents could include notes, bcc routings or internal memos not in Aereo's files. *Respondents' Brief* [#20] at 4;

14

*Response* [#6] at 7.   As mentioned above, they also assert that they are seeking documents that "may never have been in Aereo's possession." *Response* [#6] at 8.   The Broadcasters assert that they must obtain documents and testimony from DISH because

> [t]he information about DISH's licensing or acquisition of Aereo and its technology, and DISH's valuations of Aereo done along the way, will show how DISH intends to use Aereo to supplant the current licenses to retransmit [Respondents'] local broadcasts.   Similarly, evidence of how DISH contemplates integrating Aereo into DISH hardware and devices will further show how Aereo is impacting or will impact [Respondents'] retransmission consent market.   Efforts by DISH to integrate Aereo for the purpose of supplanting retransmission consent licenses from [Respondents] with Aereo are, by definition, harm to the market.

*Respondents' Brief* [#20] at 5.

DISH responds that the subpoenas are "wholly unnecessary." *Memorandum* [#2-1] at 5.   First, DISH asserts that none of the information sought need be provided <u>by DISH</u>. DISH argues that the Broadcasters can get information regarding Aereo's expansion plans, market and competition from Aereo.   "There is no excuse for Respondents' failure to first seek answers from a party to the litigation, before pursuing a non-party." *Reply* [#11] at 2.   In addition, "[t]he marginalia on DISH's internal documents is highly unlikely to be probative." *Id.*   Finally, DISH argues that the Broadcasters can get information about valuation and market analyses of Aereo from industry experts, and that the Broadcasters can best assess the impact of Aereo's service on themselves without help from DISH.

> Aereo has been operating for well over a year.   Respondents should know whether Aereo has been raised for negotiating leverage over fees.   DISH's internal documents won't shed any new light on those negotiations, and cannot be used as a substitute for analyses by retained experts. . . . Respondents should have sufficient information on harm *to their own ability to negotiate retransmission fees* within their own files and from their own witnesses.

*Memorandum [#2-1]* at 5-7; *Reply* [#11] at 2; *Movant's Brief* [#24] at 3 (emphasis in

15

original).

Second, DISH asserts that the Broadcasters are not entitled to test Aereo's production of documents by seeking documents from a third party.  If the Broadcasters think Aereo did not fully respond to document requests, they should depose Aereo.  *Reply* [#11] at 2.

Third, DISH attacks the Broadcasters' supposed need for the information to address damages in the underlying litigation.

> Regardless of whether Aereo has the right to continue to contest the issue of irreparable harm, the fact that an irreparable harm finding was already made (in an opinion affirmed on appeal) demonstrates that Respondents have sufficient evidence on the subject and no need for any of DISH's internal trade secret information to buttress their case.

*Movant's Brief* [#24] at 2-3.  Further, "Respondents may hire an industry expert to provide an opinion concerning Aereo's impact on retransmission fee negotiations."  *Id.* at 4 n.1. Finally, DISH points out that Respondents' argument that they need internal information from DISH on any potential future plans to incorporate Aereo service in order to show future market harm is disingenuous, because the Broadcasters assert that the law assumes that Aereo's use will become widespread.  If so, says DISH, "discovery into what DISH 'intends' or does not 'intend' with respect to Aereo is unnecessary."  *Id.* at 4-5.

The determination of whether the Broadcasters have carried their burden of showing that they need the confidential commercial information requested in the subpoenas depends almost exclusively on what evidence they must present to prevail on their legal claims at trial of the underlying case.  That inquiry, of course, requires assessment of the evidence they already have as well as the evidence they may still need. This Court is in no position to fully assess the scope of the evidence already amassed by

16

the Broadcasters in the WNET and ABC cases. Obviously, they have amassed enough evidence to obtain an important ruling that they would "suffer irreparable harm in the absence of a preliminary injunction" enjoining Aereo "from engaging in those aspects of its service that allow its users to access 'live' copyrighted [television] content over the internet." *Am. Broad. Cos., Inc.*, 874 F Supp. 2d at 375, 397. However, whether that evidence will carry the day at trial is unknown and unknowable at this point. It is clear, as the Broadcasters point out, that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding, and do not preclude reexamination of the merits at a subsequent trial." *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 107 (2d Cir. 2012).

In terms of what evidence the Broadcasters may still need, this Court does not doubt that the Broadcasters must show harm to their negotiation positions and business relationships to prevail, and that such harm is difficult to quantify. *Am. Broad. Cos., Inc.,* 874 F.Supp. 2d at 398. It is also clear that the Broadcasters must show that their harm is not speculative. Yet to at least some extent, the ABC court has already found that the Broadcasters have shown that their harm is not speculative. The ABC court held that "Aereo's activities will damage [the Broadcasters'] ability to negotiate retransmission agreements, as these companies will demand concessions from [the Broadcasters] to make up for this decrease in viewership," and that such harm "is not speculative." *Id.* However, the ABC court also held that the Broadcasters had demonstrated only "a *threat* of irreparable harm" as to the impact of Aereo's potential expansion.

> Although Aereo has submitted evidence that cable companies have not yet raised Aereo's service during retransmission agreement negotiations, Aereo's service has only just begun to operate on any significant scale and

Aereo has conceded that, if not enjoined, it intends to expand its operations. The record reflects evidence that Aereo may expand beyond its limited New York market over the next year. Moreover, even if Aereo does not intend to grow beyond the New York market until after this case is decided, it is clear that it has the capacity to grow rapidly in this market and is, in fact, doing so, having gone from 100 users earlier this year to 3,500 users by the time of the preliminary injunction hearing a few months later. The standard for preliminary injunctive relief requires a *threat* of irreparable harm, not that irreparable harm already [has] occurred, and [the Broadcasters] have demonstrated such a threat.

*Id.* at 399 (internal quotations and citations omitted) (emphasis in original).

In light of this finding, the Court agrees with the Broadcasters that at trial, they "must show that the harm to their position in negotiations from Aereo is real even if it will occur in the future and is hard to quantify." *Respondents' Brief* [#20] at 4. However, the Court doubts that the Broadcasters will need to make the explicit showing of future market harm they contemplate here. The subpoenas are directed toward obtaining evidence that DISH has made or will make a deal with Aereo to stream live television broadcasting to its subscribers without the necessity of paying retransmission fees to the Broadcasters, thus initiating a business model that will destroy the Broadcasters' "monetization" of their television programming content. Such evidence would constitute the "irrefutable proof of the adverse impact on the retransmission market" that the Broadcasters seek. *Response* [#6] at 5. But the Broadcasters over-estimate their need for such proof in light of the case authority they cite. Those cases appear to create a presumption that market harm will occur "when a commercial use amounts to mere duplication of the entirety of an original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. at 590 ("[W]hen a commercial use amounts to mere duplication of the entirety of an original, it clearly supersedes the objects of the original and serves as a market replacement for it, making it likely that cognizable market

harm to the original will occur") (citations and internal quotations omitted).  Indeed, the

Supreme Court has held that

> [a] challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work.  Actual present harm need not be shown; such a requirement would leave the copyright holder with no defense against predictable damage.  Nor is it necessary to show with certainty that future harm will result.  What is necessary is a showing by a preponderance of the evidence that *some* meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed.  But if it is for a noncommercial purpose, the likelihood must be demonstrated.

*Sony Corp. of Am.,* 464 U.S. 417, 451 (1984) (emphasis in original).  Neither party argues

that Aereo's intended use of the copyrighted content is not "for commercial gain."  In light

of this precedent, the Court doubts the necessity of discovery on whether DISH wants to

and can integrate Aereo into its devices.   Because Aereo's intended use of the

Broadcasters' copyrighted content is for commercial gain, a meaningful likelihood of future

harm may be presumed as a matter of law.  Under those circumstances, the Broadcasters'

need for evidence about DISH's plans vis-a-vis Aereo is not "substantial."[10]

The Courts differ on whether DISH or the Broadcasters should get the benefit of the

doubt regarding the need for confidential information of a non-party with adverse business

interests.  According to Judge Pauley of the Southern District of New York, "a district court

whose only connection with a case is supervision of discovery ancillary to an action in

another district should be especially hesitant to pass judgment on what constitutes

---

[10]  ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

relevant evidence thereunder." *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301

(S.D.N.Y. 2003) (internal quotations omitted).  This logic applies equally to judgment about

whether confidential commercial information is needed by a party to an action in another

district.   However, other courts indicate reluctance "to force a non-party competitor to

divulge confidential information [when] . . . not convinced of the relevancy of the

documents sought."  *United States v. Serta Assoc., Inc.*, 29 F.R.D. 136, 138 (N.D. Ill.

1961).  "Non-party status is a significant factor in the decision to require disclosure of trade

secrets. . . . [C]ourts should be concerned that litigation tactics not be adopted with a view

to improve a client's competitive position."  *Mycogen Plant Sci., Inc.*, 164 F.R.D. at 628.

Ultimately, the Broadcasters' arguments about their need for the information sought

in the subpoenas are not persuasive.  The only information which the Broadcasters are

unlikely to be able to obtain from Aereo (agreements relating to any licensing or acquisition

of Aereo or its technology by DISH) or industry experts (information about the impact of

Aereo on retransmission fees and valuations of Aereo) is information about what DISH is

planning regarding Aereo.  But that evidence, as asserted by the Broadcasters, relates

primarily to proof of "market harm."  Given the "assumption" that conduct like Aereo's will

become widespread, concrete proof that DISH will make a deal with Aereo which catapults

unlicensed, unpaid broadcast television into wide use is simply not needed.  In addition,

the Court finds unconvincing (and unsupported) the notion that the Broadcasters are

entitled to test Aereo's compliance with its discovery obligations by seeking confidential

commercial information from a non-party.  Moreover, the Broadcasters have already

mustered enough evidence to demonstrate irreparable harm to retransmission fees in the

underlying case, and their need for specific evidence regarding DISH's intentions vis-a-vis

Aereo to show "market harm" is questionable, at best.

In the final analysis, DISH "has no power to press its view of [copyright] law on the [New York] court, and it must accept the law that issues from that court. [The Court] therefore bears a special responsibility to alleviate the risk that the subpoenas present to [DISH]." *Mycogen*, 164 F.R.D. at 628. Moreover, the Court must be wary of any attempt to "abuse discovery to harass a competitor." *Micro Motion,* 894 F.2d at 1325. Most significantly, considering all of the circumstances present here, the Court finds that the Broadcasters have failed to demonstrate "a substantial need for the material that cannot otherwise be met." Fed. R. Civ. P. 45(d)(3)(C)(I).

In light of the above finding, the Court need not address the other factors relevant to the inquiry under Rule 45(d)(3)(C). DISH's status as a non-party weighs against disclosure, and  in the absence of a demonstration of substantial need for the confidential information sought, the balance of need versus burden falls in favor of quashing the subpoenas. *Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09-cv-02080-REB-KLM, 2010 WL 3927783, at *3 (D. Colo. Oct. 1, 2010); *see also DJO*, 2014 WL 197721, at *6.

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#2] is **GRANTED** and the subpoenas served by Respondents on Movant are **QUASHED**.

IT IS FURTHER **ORDERED** that any party who wishes to restrict access to this Order shall file a Motion under D.C.COLO.LCivR 7.2 within fourteen days.

Dated:  April 24, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge